IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**ANTHONY N. PALAVIS,**

        Plaintiff,

v.

**KILOLO KIJAKAZI,
Commissioner of Social Security,**

        Defendant.

**CIVIL ACTION NO.: 1:20-CV-276 (KEELEY)**

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

This case arises from the denial of Plaintiff Anthony N. Palavis's Title II application for a period of disability and disability insurance benefits. After Plaintiff's application proceeded through the administrative process, Administrative Law Judge ("ALJ") Brian Crockett, concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by the Appeals Counsel was denied, making the ALJ's decision the final decision of Defendant Kilolo Kijakazi ("Commissioner"), Commissioner of Social Security. Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claim for disability insurance benefits contains no legal error and is supported by substantial evidence, the undersigned reports and recommends that Plaintiff's Motion [ECF No. 15] for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 24] be **GRANTED**.

### A.     Procedural History

On April 26, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, with an alleged onset date of December 16, 2017. R. 12. The claim was denied initially on August 16, 2018, and upon reconsideration on December 21, 2018. Id. Thereafter, Plaintiff filed a request for a hearing. Id. On March 31, 2020, the ALJ held a hearing by telephone in Morgantown, West Virginia. Id. Plaintiff appeared by phone from Wheeling, West Virginia and was represented by Counsel, Taylor Potts. Id. Darren Wright, a vocational expert, also testified at the hearing. Id.

On April 15, 2020, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act at any time since the alleged onset date of December 16, 2017. R. 22. Specifically, the ALJ found at step four that Plaintiff was able to perform his past relevant work as a manager of a retail store as it is generally performed. R. 20. In the alternative, the ALJ found at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as linen grader, wrapper, and sorter. R. 21. On October 29, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

On December 18, 2020, Plaintiff, through his counsel, Taylor Potts, Esq., filed a Complaint [ECF No. 1] in this Court to obtain judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The Commissioner, through counsel Maximillian Nogay, Assistant United States Attorney, filed an Answer [ECF No. 12] and the Administrative Record [ECF No. 13] of the proceedings on June 23, 2021. Plaintiff

and the Commissioner then filed Motions for Summary Judgment along with supporting briefs. ECF No. 15; ECF No. 24. Oral argument was held on November 3, 2021.

The matter is now ripe before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

**B.    Personal History**

Plaintiff was born on April 28, 1973 and was forty-four years old at the time he applied for disability insurance benefits. R. 35. Plaintiff is 6'1" and weighs 255 pounds. Id. Plaintiff is married and lives with his wife and three children. Id. Plaintiff graduated high school and obtained a bachelor's degree in business administration. R. 36-37. Plaintiff owns two video-lottery cafes but has not engaged in substantial gainful activity since December 16, 2017, where he last worked for the United States Postal Service. R. 14, 37-39.

**C.    Medical History**

In accordance with the Order Directing Filing of Briefs [ECF No. 14], the parties were required to produce a stipulation of facts to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. Accordingly, the undersigned relies upon those stipulated facts throughout this Report and Recommendation and will not reproduce them herein. See ECF No. 15 at 3-4; ECF No. 24 at 3-7.

## II.   THE FIVE-STEP EVALUATION PROCESS

To be disabled under the Social Security Act, a claimant must meet the following criteria:

> [The] individual . . . [must have a] physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity ("RFC") based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant so proves, the burden of proof shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant is determined disabled or not disabled during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

### III.  SCOPE OF REVIEW

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. Elaborating on this definition, the Fourth

5

Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). However, the district court does not "reflexively rubber-stamp an ALJ's findings." Lewis v. Berryhill, 858 F.3d 858, 870 (4th Cir. 2017).

## IV.  CONTENTIONS OF THE PARTIES

In Plaintiff's Motion for Summary Judgment, he contends that the ALJ committed reversible error and that the decision is not supported by substantial evidence. See ECF No. 15. Specifically, Plaintiff argues that the ALJ failed to appropriately consider his testimony in the RFC function by function assessment as to how his visual limitations with reading, engaging with digital devices, need for additional time to complete job tasks, and off-task time would affect job availability and performance. Id. at 4-7. Also, Plaintiff contends that the ALJ improperly found that Plaintiff would be capable of performing past work as a retail manager given that his RFC limitations conflict with the Dictionary of Occupational Titles. Id. at 7. Based on the alleged errors, Plaintiff requests that the Court reverse the Commissioner's decision and award Plaintiff benefits, or in the alternative, remand this case for a new administrative proceeding. Id. at 8.

In Defendant's Motion for Summary Judgment, the Commissioner contends that any errors by the ALJ were harmless in nature and that the decision is supported by substantial evidence. See generally ECF No. 24. Accordingly, the Commissioner requests that the Court affirm the decision of the ALJ. Id. at 22.

## V.   DISCUSSION

### A.   The ALJ properly assessed Plaintiff's RFC.

Plaintiff testified that he experienced eye fatigue, floaters and flashes in his eyes, could work on a computer but not for more than 45-60 minutes at a time, that he could not drive at night, was sensitive to florescent lighting, and needs 50% additional time to complete day-to-day tasks. R. 27-60; ECF No. 15 at 4-6. Plaintiff also testified that he would often need to rest, take naps, and take breaks to use his eye drops multiple times per day, which would fall under off-task time. R. 27-60; ECF No. 15 at 6-7.

Plaintiff argues that the ALJ failed to appropriately consider his testimony above in the RFC function-by-function analysis as to how his visual limitations with reading, engaging with digital devices, need for additional time to complete job tasks, and off-task time would affect job availability and performance. ECF No. 15 at 4-7. The ALJ concluded that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was inconsistent with other evidence in the record. R. 18. Plaintiff similarly contends that the ALJ erred in this determination by failing to make specific findings as to the extent, if any, that Plaintiff's symptoms would affect and limit his ability to work, citing Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016) in support. ECF No. 15 at 4-7. For example, the ALJ did not directly find in the RFC whether Plaintiff

would need additional time to complete tasks, how much additional time he would need, if Plaintiff would be off-task at all, or how much off-task time he may need. Id. at 6-7.

A claimant's RFC represents "the most he can still do despite his limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019) (quoting Monroe, 826 F.3d at 188). Remand for further evaluation of the RFC is only appropriate where the ALJ fails to address a "relevant function" or "other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015).

To be clear, the ALJ did consider Plaintiff's testimony and re-summarize all of Plaintiff's claimed symptoms in his decision. See R. 17-18.[1] Furthermore, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. R. 18. Despite this determination, the ALJ decided Plaintiff's statements concerning the intensity, persistence, and limiting work-related effects of these symptoms were not entirely consistent with the medical evidence and other evidence of record. R. 18. The ALJ concluded that the evidence only partially supported the alleged loss of functioning and did not support a finding that Plaintiff was precluded from all work. R. 19.

---

[1] "The representative noted that the claimant needs to take multiple eye drops on a daily basis." R. 17. "The claimant testified that he gets fatigued easily and usually takes a nap during the day. He tries not to overuse his eye because doing so causes him to experience discomfort. He has constant floaters/flashes in his right eye. He testified that he is able to use a computer, but limits this to 45-60 minute spurts as doing more is too taxing…. It takes him approximately 50% longer to complete tasks than it used [to] and he also relies on his wife to help with completing tasks." R. 18.

Specifically, in the RFC determination, after considering Plaintiff's visual difficulties, the ALJ did assign the limitation that Plaintiff can never perform tasks that require him to work with small print and read documents written in 14-point font or less.[2] R. 17. Thus, Plaintiff's argument as it relates to the ALJ's failure to adequately consider Plaintiff's visual limitations with reading text in digital and print form is without merit and contradicted by the ALJ's specific RFC finding.[3]

When determining whether substantial evidence exists, courts must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653. Ultimately, "it is the ALJ's duty, not this Court's, to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work." Redditt v. Colvin, 2014 WL 2800820, at *6 (W. D. Va. June 18, 2014). The Court's obligation is to ensure the ALJ's decision is supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept to support a conclusion," Perales, 402 U.S. at 401, and to ensure that such a conclusion was built on "an accurate and logical bridge" stemming from that evidence. Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017).

---

[2] The ALJ found that Plaintiff had the RFC to perform light work with the following limitations:
> avoid concentrated exposure to extreme cold/heat and vibrations; avoid even moderate exposure to hazards; frequent handling/fingering bilaterally; cannot perform tasks that require a complete field of vision or depth perception, is unable to make accurate judgments of distance and speed, and cannot see objects approaching from the right side, but can avoid ordinary hazards in the workplace, for example boxes on the floor, open doors etc; can never perform job tasks that require precise near acuity to work with small items (such as threading a needle or wire or reading small print, reading documents written in 14 point font or less, or work requiring inspection for small imperfections).

R. 17.

[3] Furthermore, the alternative jobs that the ALJ found Plaintiff could perform do not require reading small print or working with digital devices rendering a more specific finding on these issues irrelevant and unnecessary.

9

Further, the ALJ meticulously explained the evidentiary basis supporting Plaintiff's RFC determination and why Plaintiff's subjective complaints about his visual limitations were not fully supported by the record, citing primarily to the relevant medical evidence and Plaintiff's daily activities. See R. 17–20, 36-37, 42, 44, 220-22, 317-18, 325, 333-34, 416-21, 428-42, 569-610. As the ALJ notes, no treating or examining source has opined the claimant is disabled or more limited than reflected in the RFC. R. 19. Perhaps what is most telling is the lack of any medical evidence supporting Plaintiff's testimony as to his alleged symptoms and the limiting effects thereof. In that regard, Plaintiff has not directed the Court to any medical evidence in the record that directly speaks to the intensity, persistence, and limiting work-related effects of these symptoms that the ALJ should have, but did not, accord weight in reaching the RFC determination.

As noted above, ALJ also considered non-medical evidence, namely, Plaintiff's daily activities and found light work to be compatible with those activities, which include driving (locally and during daylight hours), caring for his children, grocery shopping, managing financial matters including making deposits, writing paychecks, and paying bills and doing light household chores. R. 17, 19, 36-37, 42, 44. In sum, the ALJ's decision regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms is built on "an accurate and logical bridge" supported by substantial evidence.

Turning to the assignment of error, Plaintiff argues that the ALJ erred in the function-by-function analysis by failing to make specific findings as to the extent, if any, that Plaintiff's symptoms would affect and limit his ability to work, citing Monroe in support. ECF No. 15 at 4-7. In Monroe, the plaintiff alleged that the ALJ erred in

determining his RFC because the ALJ did not use a function-by-function analysis. 826 F.3d at 187. Instead, the ALJ assigned the claimant an RFC of light work (with exceptions) and found that the claimant's alleged symptoms (sleep apnea and narcolepsy) were "not credible to the extent that they are inconsistent with the RFC the ALJ identified." Id. at 188 (quotations omitted). Because the ALJ had found the claimant's symptoms not credible due to the already-decided RFC, rather than basing the decision on actual evidence, the case was remanded due to inadequacies in the analysis such as the omission of specific findings as to "whether [the claimant's] apnea or narcolepsy would cause him to experience episodes of loss of consciousness or fatigue necessitating breaks in work and if so, how often these events would occur." Id.

"However, even in cases where an ALJ does not follow a function-by-function analysis exactly, or begins the discussion by stating the determined RFC, it does not require a per se remand." Johnson v. Saul, 446 F. Supp. 3d 29, 40 (W.D.N.C. 2020) (citing Mascio, 780 F.3d at 636). "[A] formalistic factor-by-factor recitation of the evidence is unnecessary as long as the ALJ sets forth the specific evidence [he] relies on in evaluating the claimant's [alleged symptoms]." Miller v. Colvin, 2014 WL 4955230, at *22 (D.S.C. Sept. 30, 2014) (internal citation omitted); Nelson v. Astrue, 2012 WL 3555409, at *10 (E.D. Va. July 31, 2012) (stating that SSR 96-8p does not require the ALJ to set forth a detailed function-by-function analysis in the decision, "instead, a narrative discussion of the record is sufficient"). Indeed, in Monroe, the Fourth Circuit stated only that remand "may" be appropriate where an ALJ fails to fully assess a claimant's capacity to perform relevant functions. 826 F.3d at 188.

While remand may have been appropriate in Monroe, it is not here because the record provides for meaningful judicial review. The ALJ conducted an adequate function-by-function analysis, where he examined the medical opinions and Plaintiff's testimony regarding his own medical conditions, capabilities, and daily activities. R. 17-20. The record does reflect Dr. Dhaliwal's instruction that Plaintiff continue to use Restasis twice daily and serum tears 6-8 times daily to treat his dry eye syndrome. R. 576. However, there is no evidence that applying eye drops throughout the workday would require over ten percent off-task time, which according to the vocational expert would be work preclusive. In fact, the vocational expert testified that going to the breakroom for 1-2 minutes at a time to apply eye drops 6-8 times daily would fall under an acceptable amount of off-task time. R. 58. While it is true that the ALJ did not directly state whether Plaintiff would need any additional time to complete tasks, how much additional time he would need, if Plaintiff would be off-task, or how much off-task time he may need, implicit in the ALJ's ultimate findings is the fact that any amount of additional or off-task time required by Plaintiff would not reach the level of being work preclusive. See Jackson v. Berryhill, 2017 U.S. Dist. LEXIS 20586, at *36 (D.S.C. Feb. 14, 2017) (citing Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (stating that the Fourth Circuit has explained "that RFC determinations may contain implicit findings"). Thus, the undersigned finds no reversible error by the ALJ and that his decision was supported by substantial evidence.

**B.     Substantial evidence supports the ALJ's alternative finding that Plaintiff could perform other jobs in the national economy, rendering Plaintiff's past work argument moot.**

Lastly, Plaintiff contends that the ALJ improperly found that Plaintiff would be capable of performing past work as a retail manager given his limitations. ECF No. 15 at 4, 7. Plaintiff directs the Court to the Dictionary of Occupational Titles.[4] DOT Section 185.167-046 lists some of the general duties assigned to "retail store manager" such as: planning/preparing work schedules, assigning employees to specific duties and supervising them, formulating pricing policies, coordinating promotional activities, preparing or directing merchandise displays, taking inventory, keeping records, ordering merchandise, and may also entail customer service and employee hiring and training. Considering these general duties, Plaintiff argues this position would require him to do things that are directly precluded by the RFC findings, specifically reading small font. ECF No. 15 at 7.

The Commissioner concedes that the ALJ erred under Pearson v. Colvin by failing to resolve the apparent conflict between the DOT description of retail store manager and the RFC during the vocational expert's testimony. ECF No. 24 at 20-21; see Pearson v. Colvin, 810 F.3d 204, 212 (4th Cir. 2015) (citing SSR 00-4p and explaining that vocational expert "testimony that apparently conflicts with the [DOT] can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT]"). As the ALJ relied solely on the

---

[4] The Dictionary of Occupational Titles ("DOT") is a Social Security Administration resource that lists occupations existing in the economy and explains some of the physical and mental requirements of those occupations.

13

vocational expert's testimony in making the determination that Plaintiff can perform past work without resolving this apparent conflict between the DOT and RFC, this error cannot support a finding that the ALJ's decision at step four is supported by substantial evidence.

However, the Commissioner argues that such error was harmless in nature because the ALJ alternatively found that there are jobs that exist in significant numbers in the national economy that the claimant can perform such as linen grader, wrapper, and sorter, which do not conflict with the RFC. ECF No. 24 at 21; R. 21. Plaintiff does not challenge his ability to perform the tasks required in these jobs to the extent that any run contrary to the RFC limitations. For example, as the Commissioner points out, none of the listed alternative jobs at step five require reading small print or less than 14-point font. In fact, Plaintiff did not identify any error at step five or argue the ALJ's step five finding was unsupported by substantial evidence.

In short, because the ALJ's hypothetical question fairly set forth all of Plaintiff's limitations that were reasonably established by the record and because those limitations are not in conflict with the DOT for the alternative positions described above, the vocational expert's responsive testimony concerning the availability of other work constituted substantial evidence that Plaintiff was not disabled, and the ALJ was entitled to rely upon it in making his alternative step five finding. See Graves v. Colvin, 2015 WL 5167240, at *6 (M.D.N.C. Sept. 3, 2015) ("The VE was qualified to determine which jobs [the plaintiff] could perform, given the limitations set forth by the RFC, and the ALJ was entitled to rely on the VE's testimony"). Furthermore, unlike the ALJ's step four finding, at step five the ALJ explicitly determined that the vocational expert's testimony was

consistent with the DOT. R. 22. Assuming the ALJ did err in his past relevant work determination by failing to resolve any conflicts between the RFC and DOT before relying on the vocational expert's testimony, the undersigned finds that such an error was harmless because Plaintiff would still receive a "not disabled" designation at step five due to the availability of alternative jobs in the national economy. See Emigh v. Comm'r of Soc. Sec., 2015 WL 545833, at *21 (N.D. W. Va. Feb. 10, 2015) ("The court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate non-disability determination.").

## VI. RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim for disability insurance benefits contains no legal error and is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 15] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 24] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by**

**the Circuit Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 9th day of November, 2021

*[signature]*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE